UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

JORGE SANTOS CABALLERO-MELGAR, ) Civil No. 1:24-cv-43_____
                                        ) Crim No. 1:17-cr-00035-GNS-1
                 Movant, )
                                          )
v. ) **MEMORANDUM OF LAW IN**
                                          ) **SUPPORT OF MOTION UNDER**
UNITED STATES OF AMERICA, ) **28 U.S.C. § 2255 TO VACATE,**
                                          ) **SET ASIDE, OR CORRECT**
                 Respondent. ) **SENTENCE BY A PERSON**
                                          ) **IN FEDERAL CUSTODY**

COMES Movant, JORGE SANTOS CABALLERO-MELGAR ("Caballero-Melgar"), appearing *pro se*, and in support of this motion would show as follows:

## I. JURISDICTION

Caballero-Melgar timely filed a Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion") contemporaneously with this Memorandum of Law. Jurisdiction is vested in this District Court that presided over and imposed sentence pursuant to Rule 4(a) of the Rules Governing § 2255 Proceedings. See *Liteky v. United States*, 510 U. S. 540, 562 (1994). Under 28 U.S.C. § 2255, federal prisoners "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States" may move the district "court which

imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Section 2255(f) imposes a one-year limitations period upon the filing of § 2255 motions, which usually runs from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1).

## II. <u>STATEMENT OF THE GROUND FOR RELIEF</u>

A.     Whether pretrial counsel's failure to: (1) Communicate with Caballero-Melgar and Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty as Opposed to Proceeding to Trial; (2) File any Substantive Pretrial Motions; and (3) Attempt to Negotiate a More Favorable Plea Agreement Deprived Caballero-Melgar of Effective Assistance of Pretrial Counsel under the Sixth Amendment of the Constitution of the United States.

B.     Whether trial counsel's failure to: (1) Inform Caballero-Melgar of His Strategy, Any Affirmative Defenses and His Theory of His Defense; (2) Subpoena and Call Defense Witnesses on Caballero-Melgar's Behalf to Help Prove His Case; and (3) Properly Cross-examine Government Witnesses to Challenge Their Reliability and Credibility Deprived Caballero-Melgar of Effective Assistance of Trial Counsel and A Fair and Reliable Verdict.

C.     Whether sentencing counsel's failure to:(1) Properly Discuss and Explain the PSR to Caballero-Melgar Prior to the Sentencing Hearing; (2) File

Substantive Objections to the PSR; and (3) Argue for Mitigation of Punishment and Object to His Sentence Being Substantively Unreasonable.

D.  Whether appellate counsel's failure to: (1) Communicate and Keep Caballero-Melgar Informed of the Issues He Intended to Raise on Appeal; (2) Allow Caballero-Melgar to Participate in His Appeal and to Include Additional Issues; and (3) Raise Stronger Issues Than the Issues Raised on Appeal by Counsel Deprived Caballero-Melgar of Effective Assistance of Appellate Counsel, and a Fair and Meaningful Appellate Review.

## III. <u>STATEMENT OF THE CASE</u>

### A.  <u>Procedural Background</u>

On February 26, 2019, a grand jury sitting in the United States District Court for the Western District of Kentucky, Bowling Green Division, returned a seven (7) count Superseding Indictment charging Caballero-Melgar and 12 other co-defendants. See Doc. 133.[1] Count 1s charged Caballero-Melgar with Conspiracy to Commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a). *Id.* Count 2s charged Caballero-Melgar with Conspiracy to Carry or Possess A Firearm During A Crime of Violence, in violation of 18 U.S.C. §§ 924(c) and (o). *Id.* Count 3s charged

---

[1] "Doc." refers to the Docket Report in the United States District Court for the Western District of Kentucky, Bowling Green Division in Criminal No. 1:17-cr-00035-GNS-1, which is immediately followed by the Docket Entry Number.

Caballero-Melgar with Aiding and Abetting the Interference with Commerce by Robbery, in violation of 18 U.S.C. §§ 1951 and 2. *Id.* Count 4s charged Caballero-Melgar with Murder Through Use of A Firearm During A Crime of Violence, in violation of 8 U.S.C. §§1326(a) and (b)(1). *Id.* Count 5s charged Caballero-Melgar with Illegal Entry After Deportation, in violation of 18 U.S.C. §§ 924(c) and (o). *Id.*

On April 27, 2021, a 5-day jury trial commenced. See Docs. 514, 522, 528, 532, 538.

On May 3, 2021, the grand jury returned a verdict as to Caballero-Melgar: guilty on Counts 1s through 5s of the Superseding Indictment. See Docs. 540, 545.

On October 20, 2021, Caballero-Melgar was sentenced to a total term of 460 months' imprisonment, 2 years Supervised Release, no Fine or Restitution, and a Mandatory Special Assessment Fee of $500. See Docs. 574, 579.

On November 1, 2021, Caballero-Melgar timely filed a Notice of Appeal. See Doc. 582.

On July 31, 2023, the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") issued an Opinion and Judgment affirming Caballero-Melgar's sentences and convictions. See Docs. 639, 641.

### B.    Statement of the Relevant Facts

#### 1.    Offense Conduct

From December 23, 2016, through September 2, 2017, a series of fifteen armed robberies took place across Kentucky, North Carolina, Tennessee, and Indiana. Caballero-Melgar was involved in fourteen of the robberies. Only the March 17, 2017 robbery of the La Placita grocery store in Bowling Green, Kentucky requires further detail here.

On the afternoon of March 17, 2017, three Honduran men—Caballero-Melgar, Jose Adan Mejia Varela ("Varela"), and Jonny Reyes-Martinez ("Reyes-Martinez")—arrived in Bowling Green. Reyes-Martinez testified that Caballero-Melgar had the idea to rob the La Placita grocery store. Caballero-Melgar knew both men because he had assisted Reyes-Martinez, a childhood friend, in coming to the United States earlier that year, and he had met Varela through Varela's brother.

The three men met in a Wal-Mart parking lot, where Caballero-Melgar gave Varela and Reyes-Martinez guns to use in the robbery. The pistol given to Reyes-Martinez was unloaded, but Caballero-Melgar had extra bullets in his car. According to Reyes-Martinez, it was Caballero-Melgar's idea to have a loaded firearm with which to "react" in case people in the store had weapons or the police arrived. DE 592, Trial Tr., Page ID 3427. The three men left the parking lot to drive to La Placita, and Caballero-Melgar stationed himself as lookout at a nearby gas station.

About an hour before the robbery, the wives of Caballero-Melgar and Varela both made money transfers at La Placita. After they drove away, Caballero-Melgar entered the store, made two money transfers, and walked out about thirty minutes before the robbery would occur.

Around 3 p.m., Reyes-Martinez and Varela entered the La Placita grocery store, locking the door behind them. Reyes-Martinez carried two phones, being on the line with Caballero-Melgar on one. The two men

moved the employees near the cash register and bound them with duct tape. The son and daughter of one La Placita employee were in the store; the son was waiting for his father to pick him up.

After Reyes-Martinez and Varela found the money, one of the employees' phones started ringing. The men panicked and headed for the exit. As they unlocked the door to leave, the employee shouted that they were being robbed and a man who was waiting at the door to get in— Jose Cruz ("Cruz"), the father of the employee's son—entered and heard the cries of the employees. Varela exited, but Reyes-Martinez and Cruz struggled. Varela re-entered the store to help Reyes-Martinez. During the struggle, Reyes-Martinez shot Cruz. Cruz died from the injury.

Reyes-Martinez and Varela ran out of the store to Reyes-Martinez's car and quickly left Bowling Green. When they returned to Madison, Tennessee, they met Caballero-Melgar in a Home Depot parking lot to split the money evenly. Reyes-Martinez testified that he and Varela returned the firearms used in the robbery to Caballero-Melgar, who later told Reyes-Martinez that he had shipped them back to Honduras.

The last of the robberies took place in September 2017 at the Mercadito La Luz, located in Snow Hill, North Carolina. All of the individuals who robbed the store—Varela, Elvin Sanchez, Junior Bueso, Jose Cedillo-Salles, and Jaime Cedillo-Sales—left in one car. Caballero-Melgar had acted as a lookout and called the men to make them aware that the police were pursuing them, but they were all arrested. Caballero-Melgar was arrested a few days later on a warrant issued in an unrelated case and remained in custody subject to an extradition warrant until federal charges were issued in this litigation.

See Doc. 639 at 1-3.

2. <u>Trial Proceeding</u>

On April 27, 2021, a 5-day jury trial commenced before Chief Judge Greg N. Stivers. See Docs. 514, 522, 528, 532, 538. At trial, five co-conspirators, including Reyes-Martinez, testified against Caballero-Melgar, and the government introduced forensic evidence of Caballero-Melgar's phone location in proximity to each robbery and surveillance video showing him in certain store locations before the robberies took place. The government also introduced evidence that Caballero-Melgar had re-entered the country without permission after being deported. After the trial, the jury found Caballero-Melgar guilty to all counts of the Superseding Indictment. See See Docs. 540, 545.

3. <u>Sentencing Proceeding</u>

On October 20, 2021, a Sentencing Proceeding was held before Chief Judge Greg N. Stivers. See Doc. 574. The Court sentenced Caballero-Melgar to 460 months as to Count 4s; 240 months as to each of Counts 1s, 2s, and 3s; and 120 months as to Count 5s of the Superseding Indictment, all to run concurrently, for a total term of 460 months' imprisonment, 2-years of Supervised Release, no fine or restitution, and a Mandatory Special Assessment Fee of $500. See Doc. 579. *Id.* A timely Notice of Appeal was filed. See Doc. 582.

4.   Appellate Proceeding

On Appeal, Caballero-Melgar asserted errors in the trial proceedings, his conviction, and his sentence. He alleged insufficiency of the evidence, improper joinder, an error in the jury instructions, violation of his Sixth Amendment speedy trial right, improper denial of his motion for new counsel, and the procedural unreasonableness of his sentence. See Doc. 639. On July 31, 2023, the Sixth Circuit affirmed Caballero-Melgar's convictions and sentence. See Doc. 641; *United States v. Jorge Santos Caballero-Melgar*, No. 21-6036 (6th Cir. 2023).

## IV. COGNIZABLE ISSUES UNDER 28 U.S.C. § 2255

The function of a §2255 Motion to Vacate, Set Aside or Correct Sentence is to inquire into the legality of the federal prisoner's detention. See *Heflin v. United States*, 358 U. S. 415, 421 (1959). Section 2255 provides four grounds that justify relief for a federal prisoner who challenges the imposition or length of his or her detention: (1) 'that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) "that the sentence is otherwise 'subject to collateral attack.'" 28 U. S. C. § 2255 (1994). Despite this apparently broad language, violations of federal law are only cognizable if they involve a "fundamental defect" resulting in a "complete

miscarriage of Justice." *Davis v. United States*, 417 U. S. 333, 346 (1974).

Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). When a factual dispute arises in a § 2255 proceeding, an evidentiary hearing is required " 'to determine the truth of the petitioner's claims.' " *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). A § 2255 Motion requires the district court to either order the government to respond or to hold an evidentiary hearing unless the Motion, files and record of the case demonstrate that no relief is warranted. See *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir.1999). "Under 28 U. S. C. § 2255, unless the motion and record as constituted show conclusively that relief is not available, an evidentiary hearing should be held." 28 U.S.C. § 2255(b).

Upon granting a §2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255. The remedy provided in § 2255 is broad and flexible, and entrusts the federal courts with the power to fashion appropriate relief. See *Andrews v. United States*, 373 U. S. 334, 339 (1963).

Ineffective assistance of counsel claims are cognizable in a §2255 setting because they are of constitutional dimension. See *Kimmelman v. Morrison*, 477 U. S. 365, 371-79 and n.3 (1986); *Strickland v. Washington*, 466 U. S. 668 (1984).

To prevail on a claim of ineffective assistance of counsel, Caballero-Melgar must show that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See *Kimmelman*, 477 U. S. at 375.

The "reasonableness of counsel's challenged conduct" must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." *Lockhart v. Fretwell*, 506 U.S. 364, 371(1993)(citing *Strickland*, 466 U. S. at 690). In the course of the latter portion of this inquiry, the Court must consider not merely whether the outcome of the defendant's case would have been different, but also whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair. See *Lockhart*, 506 U. S. at 368-73. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart*, 506 U. S. at 372. Thus, prejudice is measured by current law and not by the law as it existed at the time of the alleged error. *Id.*

The familiar two-part test of *Strickland* has been applied by the Supreme Court and the Sixth Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance. With regard to the performance prong of the *Strickland/Hill* test, "if a defendant is represented by counsel and pleas guilty upon advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U. S. 759 (1970). "[T]o prove prejudice, [Caballero-Melgar] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 841-42. "And, of course, 'any amount of actual jail time has Sixth Amendment significance,' which constitutes prejudice for purposes of the *Strickland* test." *Glover v. United States*, 531 U.S. 198, 203 (2001). Additionally, "[o]ne of the most precious applications of the Sixth Amendment may well be in affording counsel to advise a defendant concerning whether he should enter a plea of guilty." *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). "Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" See *Missouri v. Frye*, 132 S. Ct. 1399 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376 (2012); *Premo v. Moore*, 131 S. Ct. 733, 743 (2011); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010).

In an effort to provide guidance as to how *Hill* applies to differing factual settings, the Supreme Court decided *Lafler* and *Frye* and established a constitutional standard applicable in all of the separate phases of a criminal trial to which the Sixth Amendment applies, including the point at which a defendant decides whether to plead guilty to a crime. In *Lafler*, the Court held that when counsel's ineffective advice led to an offer's rejection, and when the prejudice alleged is having to stand trial, a defendant must show that, but for the ineffective advice, there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual judgment and sentence imposed. In *Frye*, the Court held that the Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected, and that right applies to "all 'critical' stages of the criminal proceedings."

In the context of sentencing, prejudice means that but for counsel's error(s), acts and/or omissions, his sentence would have been significantly less harsh. See *Glover v. United States,* 531 U.S. 198, 203–04 (2001) (holding any increase in actual jail time due to sentencing error is prejudicial and remanding to determine if error was due to counsel's deficient performance); *McPhearson v. United States,* 675 F.3d 553 (6th Cir. 2012) (same).

The right to effective assistance of counsel includes the right to effective assistance of appellate counsel. See *Evitts v. Lucey,* 469 U.S. 387, 396 (1985). As such, Caballero-Melgar had a constitutional right to effective assistance of counsel on his first appeal. See *Ballard v. United States,* 400 F.3d 404, 407 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, Caballero-Melgar must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. In considering whether the assistance of appellate counsel was constitutionally ineffective, the familiar standard of *Strickland v. Washington,* 466 U.S. 668 (1984) is applied. Under *Strickland,* in order for Caballero-Melgar to show that counsel's performance was so deficient as to deprive him of his Sixth and Fourteenth Amendment rights, he must show: (1) that counsel's performance was objectively deficient; and (2) prejudice, which means that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the [appeal] would have been different." 466 U.S. at 687, 694. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith,* 539 U.S. 510, 521(2003) (quoting *Strickland,* 466 U.S. at 688).

# V. **DISCUSSION**

As a preliminary matter, Caballero-Melgar respectfully requests that this Court be mindful that *pro se* complaints are to be held "to less stringent standards than formal pleadings drafted by lawyers," and should therefore be liberally construed. *Jamieson v. United States*, 692 F.3d 435 (6th Cir. 2012) (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir.2004)); *Estelle v. Gamble*, 429 U.S. 97 (1976)(same); and *Haines v. Kerner*, 404 U.S. 519 (1972)(same).

A. **Pretrial Counsel's Failure To: (1) Communicate with Caballero-Melgar and Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty as Opposed to Proceeding to Trial; (2) File any Substantive Pretrial Motions; and (3) Attempt to Negotiate a More Favorable Plea Agreement Deprived Caballero-Melgar of Effective Assistance of Pretrial Counsel under the Sixth Amendment of the Constitution of the United States.**

1. Failure to Communicate with Caballero-Melgar and Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty As Opposed to Proceeding to Trial

Chapter 1, Rule 1.4: Communication of the Kentucky Rules of Professional Conduct states that:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in RPC 1.0(e), is required by these Rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Reasonable communication between the lawyer and the client is necessary for the client effectively to participate in the representation. It is one of the cornerstones of effective legal representation by an attorney.

In this case, Bryce Caldwell ("Caldwell") was first appointed as Caballero-Melgar's counsel from pretrial. On September 15, 2018, Caldwell filed a Motion to Appoint Counsel, which was granted by the Court and supplemented Jeffrey A. Darling ("Darling") as his other counsel. See Docs. 105, 116. There was not any reasonable communication from the beginning of this case between Caballero-Melgar and his counsels, so that he could effectively participate in his defense. Mostly, Caldwell did not meet the standard as set forth above in Rule 1.4 of the Kentucky Rules of Professional Conduct or any other professional norm for that matter. He

failed to reasonably consult with Caballero-Melgar about the means to be used to accomplish his objectives other than push Caballero-Melgar to plead guilty.

Adequacy of communication depends in part on the kind of advice or assistance that is involved. In this case, Caldwell visited Caballero-Melgar 10 times in four years (5 times in person and the rest were video call conferencing). For each meeting, whether in person or via video call, it lasted for no more than 30 minutes. During those visits, Caldwell would just inform him that he did not have any updates, yet about his case. Also, Caldwell did not accept any of his phone calls during those times that Caballero-Melgar has case inquiries. His counsel replied twice out of several written correspondence which he sent. Ultimately, Caballero-Melgar did not feel that his case was important to handle. Until a month before his trial, it was just that time when Caldwell talked about Plea Agreement of 28 years. In sum, Caldwell did not keep Caballero-Melgar informed about his case in order for him to make an informed decision about proceeding to trial or accepting a plea offer. Lastly, Caldwell did not inform Caballero-Melgar of the relevant circumstances and the likely consequences of proceeding to trial and pleading guilty. The guiding principle is that a lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interest. Caldwell failed to do so.

Caldwell never discussed any strategy with Caballero-Melgar nor he ever discussed the possible outcome of a trial. Caldwell failed to set Caballero-Melgar's proper expectations. After Caballero-Melgar waived the plea deal, Caldwell insisted not to proceed to trial and when asked why, his counsel could not provide any reasons at all. All the while, Caballero-Melgar's co-conspirators would testify against him at trial and Caldwell was made aware however, he helped the government by not advising him. And because Caballero-Melgar was unfamiliar with the federal judicial system and unschooled in federal law, he was forced to wholly rely on his attorney's advice.

### 2.    Failure to File any Substantive Pretrial Motions

Caldwell and Darling failed to file any substantive pretrial motions on behalf of Caballero-Melgar to  determine the strength of its case-in-chief. Hampton could have filed a Motion for Discovery. Caldwell filed no pretrial motions because from the beginning, he knew that Caballero-Melgar's co-conspirators would testify against him. Not filing any pretrial motions ultimately has lead Caballero-Melgar to Caldwell's plan– to let him decide to proceed to trial.

The record in this instance speaks for itself. The U. S. District Court Docket Report reflects that there were **no substantive pretrial motions** filed by Caldwell prior to Caballero-Melgar's trial. Hampton missed out on a golden opportunity to

assess and evaluate the strength of the government's case and the evidence that they had against Caballero-Melgar.

Such fundamental pretrial motions are essential in the development and evaluation in assessing the strengths and weaknesses of the government's case and would have aided the defense in the decisional process of whether to negotiate a Plea Agreement or to proceed to trial. His counsels were unable to provide him a copy of the Discovery. Because Caldwell failed to perform his job dutifully, Caballero-Melgar did not have the chance to go through his Discovery which would be helpful for his counsels to create defensive strategies. Caldwell failed to provide concrete strategy that he needed to be fully informed so that he could make an informed decision on whether to plead guilty or proceed to trial. As such, he relied on Caldwell' erroneous advice to his detriment. Caldwell's representation was deficient because Caballero-Melgar was not properly informed of the relevant circumstances and likely consequences of pleading guilty as opposed to standing trial in order to make an informed decision about which course to take. Caldwell let Caballero-Melgar believe that proceeding to trial was not the best option however, his counsel did not come up with any reason at all why Caballero-Melgar should not proceed to trial, too.

In this case, Caldwell failed to conduct any pretrial investigation. In reality, he did not conduct any kind of research and just relied on what information the

government have. He failed to investigate the alleged firearm which was used in the instant offense nor the commission of the murder since Caballero-Melgar's role was as a look-out only.

To obtain relief on an ineffective assistance of counsel claim, Caballero-Melgar must demonstrate that his attorney's performance was deficient, and that there is a reasonable probability that, but for counsel's deficient performance, he would have plead guilty. See *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Strickland v. Washington*, 466 U.S. 668, 687 (1984) ("*Strickland*"); see also, *Lafler v. Cooper*, 132 S. Ct. 1376 (2012) ("*Lafler*"); *Missouri v. Frye*, 132 S. Ct. 1399 (2012) ("*Frye*"); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010) ("*Padilla*") ("Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'") (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

3.   <u>Failure to Attempt to Negotiate a More Favorable Plea Agreement</u>

When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice. See *Lee v. United States*, 582 U.S. ___ (2017). Where a defendant persists in a plea of not guilty, counsel's failure to properly inform him about potential sentencing exposure may constitute ineffective

assistance. *United States v. Smith*, No. 96-5385, 1998 WL 136564 (6th Cir. Mar.19, 1998).

To obtain relief on an ineffective assistance claim, Caballero-Melgar ultimately must demonstrate that his attorney's performance was deficient, and that there is a reasonable probability that, but for counsel's deficient performance, he would have proceeded to trial. See *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Strickland v. Washington*, 466 U.S. 668, 687 (1984) ("*Strickland*"); see also, *Lafler v. Cooper*, 132 S. Ct. 1376 (2012) ("*Lafler*"); *Missouri v. Frye*, 132 S. Ct. 1399 (2012) ("*Frye*"); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010) ("*Padilla*") ("Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'") (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

In *Hill*, the Court considered a *Strickland* claim based on allegations that the petitioner's lawyer had given bad advice that caused him to plead guilty instead of proceeding to trial. While there have been many cases analogous to *Hill*, it has been understood that *Hill* established a rule applicable to other circumstances when lawyers advise their clients at the plea-bargaining stage of the case. Cf. *Lafler*, supra; *Frye*, supra; *Padilla*, 130 S. Ct. at 1485 n.12. For instance, *Hill* has been applied to a case in which a lawyer was found to have provided ineffective assistance of counsel when the defendant rejected a plea deal and proceeded to trial in the face of

overwhelming evidence of guilt and lacking any viable defense. See *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991).

The U.S. Supreme Court decided *Lafler* and *Frye* in an effort to provide guidance in how *Hill* applies to differing factual settings, and established constitutional standard applicable in all of the separate phases of a criminal trial where the Sixth Amendment applies, including the point at which a defendant decides whether to plead guilty to a crime. In *Lafler*, the Court held that when counsel's ineffective advice led to an offer's rejection, and when the prejudice alleged is having to stand trial, a defendant must show that but for the ineffective advice, there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual judgment and sentence imposed. In *Frye*, the Court held that the Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected, and that right applies to "all 'critical' stages of the criminal proceedings."

In this case, Caldwell did not communicate with Caballero-Melgar of what possible plea deal the government could be offered to him. Instead, it was only after when Caballero-Melgar expressed his decision to proceed to trial when Caldwell

brought up the 28 years plea offer. And since it was already discussed, there was no detailed information to make Caballero-Melgar not to retract from proceeding to trial. If not for Caldwell's erroneous assessment of Caballero-Melgar's inaccurate judgment of records; failure to secure a favorable Plea Agreement from the government; and incorrect advice, Caballero-Melgar would have opted to plead guilty without a Plea Agreement (so he can preserve all his rights to appeal) and receive a significantly less harsh sentence.

This present matter is similar to *Lafler* in that Caballero-Melgar was misinformed by Caldwell of the likely consequences of pleading guilty rather than proceeding to trial. In fact, there is a reasonable probability that Caballero-Melgar would have pleaded guilty had Caldwell not affirmatively misadvised him regarding his case. Caballero-Melgar was forced to wholly rely on his counsel's advice, and based on that advice, proceed to trial and netted him a 460-month sentence. Had Caballero-Melgar been properly informed by Caldwell, he would have had a correct understanding of the facts, law of the case and likely consequences in order to make an intelligent and informed decision of whether to proceed to trial or to plead guilty without a written Plea Agreement. "It is the lawyer's duty to ascertain if the plea is available, that it would have led to a shorter sentence and entered voluntarily and knowingly. He must actually and substantially assist his client in deciding whether

to plead guilty. It is his job to provide the accused an understanding of the law in relation to the facts." *Gonzalez v. Crosby*, 545 U.S. 524, 542 (2005). The advice he gives need not be perfect, but it must be reasonably competent. His advice should permit the accused to make an informed and conscious choice. *Lafler*, supra. In other words, if the quality of counsel's advice falls below a certain minimum level, the client's decision whether to plead guilty or proceed to trial cannot be knowing and voluntary because it will not represent an informed choice. *Id.*

As such, Caldwell performed below an objective standard of reasonableness. Had he familiarized himself with the facts and researched the applicable law and sentencing guidelines, he would have been able to correctly inform Caballero-Melgar of the likely consequences and hurdles that he faced if he pled guilty or proceeded to trial. He simply failed to do so, and as a result, Caballero-Melgar was prejudiced by receiving a 460-month sentence. *Glover*, supra. Caldwell's misrepresentation of material facts, which Caballero-Melgar wholly relied on, constituted deficient performance. He suffered prejudice from Caldwell's acts and omissions when he received a 460-month sentence. As such, Caballero-Melgar easily meets *Strickland*'s two prong test for ineffective assistance of counsel and relief should be granted in the first instance. Caldwell's errors in this case were so blatant and flagrant that the Court can conclude that they resulted from a lack of experience, or neglect rather than an

informed professional deliberation. Additionally, Caballero-Melgar requested if Caldwell could negotiate the 28-year plea deal down to 20 years however, Marisa J. Ford ("Ford"), plaintiff counsel would like his full cooperation to the instant offense. Although it was raised, Caldwell was not given the opportunity to discuss it further. Caldwell, being his representative on this case, failed his duty to properly coordinate Caballero-Melgar to gain a lower sentence.

Furthermore, Caldwell advised Caballero-Melgar that he was not confident in taking his case due to its complexity and lack of handling cases like his. In fact, Caballero-Melgar requested a new counsel to which how Darling was supplemented to his another counsel. Because Caldwell did not have enough exposure to complex cases, his advice was not a predication, probability, or an estimate, but rather a lack of communication with Caballero-Melgar since he did not know what legal advise to give. In turn, Caballero-Melgar had to wholly rely on his erroneous advice. Thus, Caballero-Melgar was not fairly apprised of the consequences of his decision to proceed to trial. In other words, Caballero-Melgar's reliance on Caldwell's significantly flawed advice about the consequences of proceeding to trial rather than pleading guilty violated his due process rights. See *Hill*, 474 U.S. at 56.

Accordingly, Caballero-Melgar's conviction and sentence should be vacated for relief in the first instance.

**B.** **Trial Counsel's Failure To: (1) Inform Caballero-Melgar of His Strategy, Any Affirmative Defenses and His Theory of His Defense; (2) Subpoena and Call Defense Witnesses on Caballero-Melgar's Behalf to Help Prove His Case; and (3) Properly Cross-examine Government Witnesses to Challenge Their Reliability and Credibility Deprived Caballero-Melgar of Effective Assistance of Trial Counsel and A Fair and Reliable Verdict.**

To prevail on a claim of ineffective assistance of counsel a defendant must establish: 1) That counsel proved ineffective assistance and 2) that such ineffectiveness was prejudicial to the defendant. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed. 2d 674 (1984).

In this case, Caballero-Melgar was not provided with clear strategy on how his counsel would attack the case. Below are some of the important highlights of the trial that Caldwell failed or neglected to raise at trial:

*Failure to Challenge False Statements of Witnesses.* In this case, Caballero-Melgar's co-conspirators stood against him during the trial. According to his co-conspirators, the robbery was all Caballero-Melgar's plan. Also, they alleged that he provided them with a gun to use for threatening their victims. During the said robbery, Caballero-Melgar was not at the location. In fact, he served as a look-out and had no idea that there was an altercation which led to the death of J.C. Moreover, Caballero-Melgar's absence in the location puts his co-conspirators in their own discretion, whether or not, to use the firearm they possessed at that time.

*Failure to Challenge the Alleged Firearm Used.* In *Amelio Mack v. USA*, No. 18-12273 (11th Cir. 2019), a summary denial of 28 U.S.C. § 2255 petition was reversed and remanded for evidentiary hearing on whether

the Petitioner received ineffective assistance by failing to object to the application of the dangerous-weapon enhancement. The pre-sentence report stated that during a search of Mack's home, guns were found, and recommended a 2-level dangerous weapon enhancement. Counsel did not object, and Mack received an enhanced sentence. The guns were found well after the conspiracy ended and in a place with no apparent connection to his drug-trafficking activities. Further, Mack alleged, had counsel investigated the matter, he would have discovered that the guns belonged to his daughter and his wife.

Here, same relief should be granted to Caballero-Melgar because he had no idea that his co-conspirators were carrying firearms. In fact, during his arrest, there were no seized firearms from Caballero-Melgar. This Court fully relied on the testimonies provided by the witnesses. To justify this enhancement, the government bears the initial burden of showing, by a preponderance of the evidence, either "that the firearm was present at the site of the charged conduct or . . . that the defendant possessed a firearm during conduct associated with the offense of conviction." *United States v. Stallings*, 463 F.3d 1218, 1220–21 (11th Cir. 2006).

In general, Caldwell had no definitive trial strategy or legal defense for Caballero-Melgar. Caldwell failed to call Caballero-Melgar's character witnesses on trial which he suggested to interview, namely Frank and Digna Flores. For a counsel like Caldwell, who does not have any specific trial strategy, he could have at least brought people to the Court to help them illustrate Caballero-Melgar's character away from the one presented by the government and his co-conspirators. Most importantly, Caldwell did not interview the government's witnesses. This could have been a great way to start a defense plan, however, he failed to do so.

During trial, Caldwell not only failed to explain his sentencing exposure; he also failed to inform him of his trial strategy. As discussed above, Caldwell failed in several (if not all) areas of Caballero-Melgar's defense. Caldwell never mentioned any type of investigation that he conducted.

The Sixth Amendment, and a defendant's right to due process, requires "that any person brought to trial in . . . federal court must be afforded the right assistance of counsel before he or she can be validly convicted and punished by imprisonment." *U.S. v. Barton*, 526 F.App'x 360, 362 (5th Cir.2013).

Accordingly, Caballero-Melgar's conviction and sentence should be remanded.

**C.** **Sentencing Counsel's Failure To: (1) Properly Discuss and Explain the PSR to Caballero-Melgar Prior to the Sentencing Hearing; (2) File Substantive Objections to the PSR; and (3) Argue for Mitigation of Punishment and Object to His Sentence Being Substantively Unreasonable**

After the jury convicted Caballero-Melgar, the PSR was released. Caldwell failed to correctly discuss and explain the PSR to him. He did not explain it to him so that he could understand the sentencing calculations and the relevant conduct of the offense. In fact, Caballero-Melgar has not seen his PSR until this day. More so, Caldwell could have argued the following:

*Pinkerton* Jury Instruction. The jury returned a guilty verdict as to all counts with the given *Pinkerton* instruction:

27

"that in the course of the crime, the defendant or another person caused the death of J.C. by murder through the use of the firearm; and Fifth, that murder through the use of the firearm was reasonable foreseeable to the defendant, meaning the defendant could have reasonably anticipated the murder as a natural consequence of the robbery."

In this case, Caballero-Melgar's sentence should be vacated because it shows that his counsel performed deficiently by failing to object to the *Pinkerton* jury instructions. While the video evidence was not played [during trial] to see if indeed, he shot the victim, there was no evidence that there was any spatial or temporal overlap between the murder and alleged possession of the gun. Caballero-Melgar's convictions must be reversed on the grounds that the trial court's instructions erroneously allowed the jury to convict him on the basis of vicarious liability without finding that he was legally accountable to the murder of the victim. As mentioned, although Caballero-Melgar was within the vicinity, he was not in the same exact location where the firearm was used by Reyes-Martinez. Moreover, it was not Caballero-Melgar who used the firearm and shot J.C. However, Caldwell was not effective in raising this sensitive detail. In sum, Caldwell failed to challenge the firearm and murder offenses and let him suffer with the ruthless sentence.

At sentencing, Caldwell failed to properly argue the aforementioned issues. Caballero-Melgar was confused by the way the Guidelines worked in his case.

Because Caballero-Melgar was unfamiliar with the federal judicial system and unschooled in federal law, he was forced to wholly rely on his attorney's advice. Had Caldwell studied his case before advising Caballero-Melgar to proceed to trial, he could have had a lower sentence.

No reasonably competent counsel would have failed to object to the PSR's guideline calculations, especially in the face of the parties' Plea Agreement, and there was no arguable strategy for the failure to do so. The error of Caballero-Melgar's counsel in failing to challenge in any way the calculations contained in the PSR was "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

As such, Caballero-Melgar received a sentence of 460 months' imprisonment, which is substantively unreasonable. Caldwell's failure to properly argue PSR objections and failure to object to his sentence being substantively unreasonable, he failed to preserve any issues for appellate review.

It is clear that, Caldwell was not propelry prepared to argue objections to the PSR and argue for mitigation of Caballero-Melgar's sentence (at sentencing).

With regard to the 18 U.S.C. § 3553(a) sentencing factors, Caldwell failed to file a motion for a downward variance or object to Caballero-Melgar's sentence being substantively unreasonable. As such, his sentence and conviction must be vacated.

**D.** **Appellate Counsel's Failure To: (1) Communicate and Keep Caballero-Melgar Informed of the Issues He Intended to Raise on Appeal; (2) Allow Caballero-Melgar to Participate in His Appeal and to Include Additional Issues; and (3) Raise Stronger Issues Than the Issues Raised on Appeal by Counsel Deprived Caballero-Melgar of Effective Assistance of Appellate Counsel, and a Fair and Meaningful Appellate Review.**

During the appeal, Caldwell did not allow Caballero-Melgar to participate in his appeal and share his inputs.

Caballero-Melgar must show that appellate counsel failed to raise an obvious issue that was stronger than the other claims raised and that prejudice flowed from that failure. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Prejudice exists if "there is a reasonable probability that the issue his appellate attorney failed to raise would have altered the outcome of the appeal, had it been raised." *Williams v. Anderson*, 460 F.3d 789 (6th Cir. 2006).

The relevant question is whether appellate counsel was "objectively unreasonable" in failing to raise meritorious claims on direct appeal that were stronger than the ones raised by him. If so, whether there is a "reasonable probability that, but for his counsel's unreasonable failure" to raise these claims, "defendant have prevailed on his appeal." See *Lordi v. Ishee*, 384 F.3d 189 (6th Cir. 2004) (applying

*Strickland*, 466 U.S. at 687-91, 694). In considering a claim of ineffective assistance of appellate counsel, "when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome") See *Bowen v. Foltz*, 763 F.2d 191, 195 (6th Cir.1985).

Had Caldwell questioned witnesses' credibilty, reconsider evidences, and properly argued the murder and firearm offenses on appeal, there is a reasonable probability that he would have won his appeal.

## VI. <u>CONCLUSION</u>

For the above and foregoing reasons, Caballero-Melgar's sentence must be vacated for resentencing. In the alternative, an evidentiary hearing should be held so that Caballero-Melgar may further prove her meritorious ground for relief, resolve any disputed facts, and expand an incomplete record.

Respectfully submitted,

Dated: February 29, 2024

JORGE S. CABALLERO- MELGAR
REG. NO. 91631-083
FCI RAY BROOK
FEDERAL CORR. INSTITUTION
P.O. BOX 900
RAY BROOK, NY 12977
Appearing *Pro Se*