**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CRIMINAL ACTION NO. 1:17-CR-00035-GNS-HBB-1**
**CIVIL ACTION NO. 1:24-CV-00043-GNS**

**JORGE SANTOS CABALLERO-MELGAR**                    **MOVANT/DEFENDANT**

**VS.**

**UNITED STATES OF AMERICA**                    **RESPONDENT/PLAINTIFF**

**FINDINGS OF FACT, CONCLUSIONS OF LAW**
**AND RECOMMENDATION**

## I.  BACKGROUND

Before the Court is a motion to vacate under 28 U.S.C. § 2255, that Movant/Defendant

Jorge Santos Caballero-Melgar filed, *pro se*, on March 8, 2024 (DN 647) ("motion to vacate").[1]

Respondent/Plaintiff filed a response (DN 670).  Caballero-Melgar filed a reply (DN 673).

Following an evidentiary hearing, Caballero-Melgar filed a supplemental brief in support of his

motion to vacate (DN 688).  Respondent/Plaintiff filed a supplemental brief in response (DN 689).

Cabellero-Melgar did not file a reply.  This matter is ripe for determination.  For the reasons set

forth below, the undersigned recommends that Caballero-Melgar's motion to vacate be **DENIED**

and **DISMISSED**.

## II.  FINDINGS OF FACT

On March 17, 2017, Caballero-Melgar and accomplices robbed a Hispanic market called

"La Placita" in Bowling Green, Kentucky (DN 1).  During the robbery, a victim arrived at the store

---

1 The District Judge referred this matter to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) for rulings
on all non-dispositive motions; for appropriate hearings, if necessary; and for findings of fact and recommendations
on any dispositive matter (DN 649).

to pick up his two children, which resulted in the victim being shot and killed by one of the armed robbers (*Id.*). The La Placita robbery is one of twelve committed between January and September of 2017 in Kentucky, Tennessee, and North Carolina connected to this organized group (*Id.*). Caballero-Melgar was arrested after investigation identified him as part of the robbery ring (*Id.*). Caballero-Melgar admitted to driving the vehicle and waiting down the street from the robberies to quickly exit the area once the robbery was committed (*Id.*).

A.     **Criminal Proceedings**

On November 15, 2017, the Grand Jury returned a two-count indictment against Caballero-Melgar (DN 33). Count 1 charged that on March 17, 2017, Caballero-Melgar and accomplices knowingly and intentionally conspired to interfere with commerce by robbery of the La Placita market, in violation of 18 U.S.C. § 1951(a)(1), (b)(1), and (b)(3) (*Id.*). Count 2 charged that on March 17, 2017, Caballero-Melgar and accomplices used a firearm in the course of a crime of violence, causing the death of a person through the use of a firearm, in violation of 18 U.S.C. § 924(j)(1) (*Id.*).

On February 26, 2019, the Grand Jury returned a superseding indictment against Caballero-Melgar (DN 133). Count 1 charged Caballero-Melgar with conspiracy to interfere with commerce by robbery between December 23, 2016, and September 2, 2017, in violation of 18 U.S.C. § 1951(a) (*Id.*). Count 2 charged Caballero-Melgar with conspiracy to carry or possess a firearm during a crime of violence between December 23, 2016, and September 2, 2017, in violation of 18 U.S.C. § 924(c) and (o) (*Id.*). Count 3 charged that on March 17, 2017, Caballero-Melgar interfered with commerce by robbery in violation of 18 U.S.C. §§ 1951 and 1952 (*Id.*). Count 4

charged that on March 17, 2017, Caballero-Melgar committed murder through the use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) and (j)(1) (*Id.*). Count 5 charged Caballero-Melgar with illegal reentry after deportation in violation of 8 U.S.C. § 1326(a) and (b)(1) (*Id.*). Counts 6 and 7 did not charge Caballero-Melgar (*Id.*).

On May 3, 2021, at the conclusion of Caballero-Melgar's trial, the jury returned a verdict of guilty as to Counts 1, 2, 3, 4, and 5 in the superseding indictment (DN 540). On October 20, 2021, the Court sentenced Caballero-Melgar to a total of 460 months imprisonment: 240 months each as to Counts 1, 2, and 3; 460 months as to Count 4; and 120 months as to Count 5 of the superseding indictment to run concurrently (DN 579). Upon release, Caballero-Melgar would be under supervised release for two years as to each count to run concurrently (*Id.*).

Caballero-Melgar pursued a direct appeal (DN 582). In an opinion filed on July 31, 2023, a panel of the Sixth Circuit affirmed the judgment of this Court as he failed to show any error (DN 639).

**B.**    <u>The Motion to Vacate</u>

On March 8, 2024, Caballero-Melgar, proceeding *pro se*, filed a motion to vacate under 28 U.S.C. § 2255 (DN 647). Caballero-Melgar's motion to vacate raises the following four claims: Ground One alleges that prior to trial, counsel provided ineffective assistance in violation of his Sixth Amendment rights by failing to communicate with him about relevant circumstances and consequences of pleading guilty versus going to trial, failing to file any pretrial motions, and failing to negotiate a more favorable plea agreement; Ground Two alleges that at trial, counsel provided ineffective assistance in violation of his Sixth Amendment rights by failing to inform him of

defense strategy, defense theory, and any affirmative defenses available to him, failing to call witnesses to support his defense, and failing to adequately cross-examine prosecution witnesses; Ground Three alleges that at sentencing, counsel provided ineffective assistance in violation of his Sixth Amendment rights by failing properly discuss and explain the presentence report, failing to file objections to the report, and failing to argue for mitigation and object to the sentence imposed as unreasonable; Ground Four alleges that on appeal, counsel provided ineffective assistance in violation of his Sixth Amendment rights by failing to communicate with him about the issues to be raised on appeal, failing to include him in the appeals process and raise additional claims, and failing to raise stronger issues than those included in the appeal (*Id.*). Caballero-Melgar asks the Court to vacate his conviction and sentence and, alternatively, grant an evidentiary hearing to develop the record or any other relief to which the Court deems him entitled (*Id.*).

On September 24, 2024, the United States filed a response (DN 670). The United States asserts that all Caballero-Melgar's claims fail because he did not show that his attorney's conduct was deficient or prejudicial (*Id.*). Caballero-Melgar filed a reply on October 15, 2024 (DN 673).

On July 30, 2025, the Court conducted an evidentiary hearing (DN 685). Caballero-Melgar appeared, represented by his appointed counsel, Dawn McCauley (*Id.*). Assistant United States Attorney Alicia P. Gomez represented the United States of America (*Id.*). Caballero-Melgar presented evidence through the testimony of Attorney Kevin Schad, Federal Defender from the Southern District of Ohio; Attorney Bryce Caldwell, lead trial counsel; and Caballero-Melgar himself (*Id.*). Although Jeffrey A. Darling served as appointed co-counsel at the trial level, neither

party called him as a witness during the evidentiary hearing.[2]   At the close of the evidentiary hearing, the undersigned established a schedule for the parties to submit supplemental briefs (*Id.*).

On October 10, 2025, Caballero-Melgar filed a post-hearing brief that sets forth argument in support of revised versions of Grounds One, Two, and Three (DN 688 PageID # 4476-82). Evidence developed during the evidentiary hearing prompted the changes and refinements to Caballero-Melgar's 2255 motion (*Id.* at PageID # 4476).   Ground One now alleges that trial counsel breached a duty to Caballero-Melgar by not adequately explaining the doctrine of accomplice liability, which deprived Caballero-Melgar of the ability to make an informed decision regarding whether to accept a plea offer or proceed to trial (*Id.* at PageID # 4477-78).   Ground Two now alleges that trial counsel did not cross-examine six prosecution witnesses and conducted inadequate cross-examinations of three co-conspirators (*Id.* at PageID # 4478-81).   Ground Three now alleges ineffective assistance of counsel because of the cumulative effect of several pretrial, trial, and sentencing errors (*Id.* at PageID # 4481-82).   Notably, Caballero-Melgar's post-hearing brief is silent as to the claim of ineffective assistance of appellate counsel set forth in Ground Four of the 2255 motion (DN 647 PageID # 3998).

On November 7, 2025, the United States filed a response (DN 689).  Caballero-Melgar has not filed a reply.  This matter is ripe for determination.

### III.   CONCLUSIONS OF LAW

#### A.   Standard of Review

---

2 The Court originally appointed Jeffrey A. Darling as co-counsel in the capital case against Caballero-Melgar (DN 116).   After the United States decided not to seek the death penalty, the Court allowed Mr. Darling to stay on as appointed co-counsel (DN 240).

A federal prisoner challenges the legality of his detention by motion under 28 U.S.C. § 2255. *Wooten v. Cauley*, 677 F.3d 303, 306 (6th Cir. 2012). "A motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *United States v. Doyle*, 631 F.3d 815, 817 (6th Cir. 2011) (internal quotation marks omitted) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).

Here, Caballero-Melgar alleges three errors of constitutional magnitude. To obtain relief under § 2255 on the basis of constitutional error, the record must reflect an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999); *United States v. Ross*, 40 F.3d 144, 146 (7th Cir. 1994).

### B. Ground One

#### 1. *Arguments of the Parties*

The ineffective assistance of counsel claim in Ground One now asserts that "[i]n the plea-bargaining context counsel has duty to provide the defendant with sufficient information to make an informed decision whether to accept or reject a plea offer" (DN 688 PageID # 4477) (citing *Missouri v. Frye*, 566 U.S. 134, 145 (2012)). Further, it contends that "under Kentucky Rules of Professional Conduct, SCR 3.130(1.4), '[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation'" (*Id.*). Ground One now argues that Mr. Caldwell "failed to satisfy this duty by not adequately explaining

6

the doctrine of accomplice liability, thereby depriving [Caballero-Melgar] of the ability to make an informed decision regarding whether to accept a plea offer or proceed to trial" (*Id.*). Further, there is a reasonable probability that, but for Mr. Caldwell's failure, Caballero-Melgar would have accepted the prosecution's plea offer (*Id.* at PageID # 4478).

The United States contends that trial counsel's testimony indicates he took reasonable steps to explain accomplice liability, which included examples of the law's application, but Caballero-Melgar refused to accept the law on this issue and to plead to any offense that included the murder (DN 689 PageID # 4485-86) (citing DN 686 PageID # 4210, Evid. Hr'g Tr.). The government points out that Caballero-Melgar's own testimony indicates an unwillingness to plead guilty to the murder charge (*Id.* at PageID # 4486) (citing DN 686 PageID # 4278, Evid. Hr'g Tr.). The United States argues that Caballero-Melgar's refusal to accept trial counsel's advice concerning the law and possible outcomes at trial does not render trial counsel's performance deficient (*Id.*).

## 2. *Applicable Law*

To establish ineffective assistance of trial counsel, a defendant must show deficient performance and resulting prejudice. *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The performance inquiry requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In making this assessment, the Court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. Further, the Court must determine whether, considering all the circumstances, counsel's challenged conduct falls outside the wide range of

professionally competent assistance. *Id.* Additionally, the Court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The Supreme Court's discussion about resulting prejudice begins with the observation "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Thus, under the prejudice inquiry, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The Supreme Court subsequently held that the two-part *Strickland* test is applicable to guilty plea challenges based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984)). The Supreme Court explained that in guilty plea challenges, the first part of the *Strickland* test is nothing more than a restatement of the standard of attorney competence set forth in *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) and *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970). *Hill*, 474 U.S. at 58-59. Thus, where a movant is represented by counsel during the plea process and enters a guilty plea upon the advice of counsel, the movant is limited to challenging the voluntariness of the plea by showing that the advice received from counsel fell below an objective standard of reasonableness. *See id.* To satisfy the second part of the *Strickland* test, the movant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty

and would have insisted on going to trial." *Id.* at 59.  The prejudice test is objective, not subjective, so a defendant must convince the court that his "decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

In *Missouri v. Frye*, 566 U.S. 134, 138 (2012) and *Lafler v. Cooper*, 566 U.S. 156, 160 (2012), the petitioners sought a remedy when inadequate assistance of counsel caused nonacceptance of a plea offer and further proceedings led to a less favorable outcome.  In both cases, the Supreme Court confirmed that the two-part *Strickland* test applies to claims of ineffective assistance of counsel during the plea-bargaining process.  *Frye*, 566 U.S. at 138; *Lafler*, 566 U.S. at 162.

In *Frye*, defense counsel failed to inform the petitioner of the prosecutor's plea offer, and after that offer lapsed the petitioner made an open plea and received a much greater sentence.  566 U.S. at 138-39.  In pertinent part the decision reads:

> This Court now holds that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused.  Any exceptions to that rule need not be explored here, for the offer was a formal one with a fixed expiration date.  When defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires.

> Though the standard for counsel's performance is not determined solely by reference to codified standards of professional practice, these standards can be important guides.  The American Bar Association recommends defense counsel "promptly communicate and explain to the defendant all plea offers made by the prosecuting attorney," ABA Standards for Criminal Justice, Pleas of Guilty 14–3.2(a) (3d ed. 1999), and this standard has been adopted by numerous state and federal courts over the last 30 years. . . The standard for prompt communication and consultation is also set out in state bar professional standards for attorneys.

*Id.* at 145-46 (citations omitted). It warrants mention that *Frye* is factually distinguishable from Cabellero-Melgar's case because Cabellero-Melgar is not alleging that Mr. Caldwell failed to inform him of a formal plea offer by the United States.

Moving on to the prejudice part of the *Strickland* test, the Supreme Court in *Frye* explained:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. Cf. *Glover v. United States*, 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001) ("[A]ny amount of [additional] jail time has Sixth Amendment significance").

> This application of *Strickland* to the instances of an uncommunicated, lapsed plea does nothing to alter the standard laid out in *Hill*. In cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S., at 59, 106 S.Ct. 366. *Hill* was correctly decided and applies in the context in which it arose. *Hill* does not, however, provide the sole means for demonstrating prejudice arising from the deficient performance of counsel during plea negotiations. Unlike the defendant in *Hill*, Frye argues that with effective assistance he would have accepted an earlier plea offer (limiting his sentence to one year in prison) as opposed to entering an open plea (exposing him to a maximum sentence of four years' imprisonment). In a case, such as this, where a defendant pleads guilty to less favorable terms and claims that ineffective assistance of counsel caused him to miss out on a more favorable earlier plea offer, *Strickland*'s inquiry into whether "the result of the proceeding would have been different," 466 U.S., at 694, 104 S.Ct. 2052, requires looking not at whether the defendant would have proceeded to trial absent ineffective assistance but whether he would have accepted the offer to plead pursuant to the terms earlier proposed.

> In order to complete a showing of *Strickland* prejudice, defendants who have shown a reasonable probability they would have accepted the earlier plea offer must also

show that, if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented. This further showing is of particular importance because a defendant has no right to be offered a plea, see *Weatherford*, 429 U.S., at 561, 97 S.Ct. 837, nor a federal right that the judge accept it, *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

*Id.* at 147-49. The above analysis is helpful in assessing whether Caballero-Melgar has made a showing of *Strickland* prejudice.

In *Lafler*, defense counsel conveyed the favorable plea offer to the petitioner, but he rejected it due to counsel's deficient advice.[3] 566 U.S. at 160. Following a full and fair trial, the jury returned a guilty verdict, and the petitioner received a much harsher sentence than what had been offered in the rejected plea offer. *Id.* In *Lafler*, the parties agreed that counsel's performance was deficient when he advised the defendant to reject the plea offer because he could not be convicted at trial. *Id.* at 163. Consequently, the Supreme Court deemed it unnecessary to explore the performance issue. *Id.*

Concerning the application of *Strickland*'s prejudice test, the Supreme Court explained the defendant must show that but for the ineffective assistance of counsel there is a reasonable probability that the defendant would have accepted it, the prosecution would not have withdrawn it due to intervening circumstances, "the court would have accepted its terms, and that the

---

3 Lafler was charged under Michigan law with assault with intent to murder, possession of a firearm by a felon, possession of a firearm in the commission of a felony, misdemeanor possession of marijuana, and for being a habitual offender. *Lafler v. Cooper*, 566 U.S. 156, 161 (2012). On two occasions, the prosecutor offered to dismiss some of the charges and to recommend a sentence of 51 to 85 months for the remaining charges, in exchange for Lefler entering a guilty plea. *Id.* In a communication with the court, Lafler admitted guilt and expressed a willingness to accept the offer. *Id.* But Lafler later rejected the offer on both occasions, allegedly after defense counsel convinced him that the prosecution would be unable to establish his intent to murder Mundy because she had been shot below the waist. *Id.* On the first day of trial the prosecution offered a significantly less favorable plea deal, which Lafler again rejected. *Id.*

conviction or sentence, or both, under the offer's terms would have been less than under the judgment and sentence that in fact were imposed." *Id.* at 163-64.

Notably, courts need not conduct the two-prong *Strickland* inquiry in the order identified above or even address both parts of the test if the movant makes an insufficient showing on one. *Strickland*, 466 U.S. at 697. For example, if a court determines the movant fails to satisfy the prejudice prong, then it need not determine whether counsels' performance was deficient. *Id.*

### 3.   *Discussion*

#### a.   **Performance Prong**

In *Frye*, the Supreme Court indicated that state bar professional standards such as Ky. Sup. Ct. Rule 3.130, Rule Prof. Conduct 1.4 can be important guides in assessing counsel's performance in the context of communicating plea offers to the client. 566 U.S. at 145. In pertinent part the Communication Rule states, "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Ky. Sup. Ct. Rule 3.130, Rule Prof. Conduct 1.4(b).

During the evidentiary hearing both witnesses testified that Mr. Caldwell used a Spanish-speaking interpreter each time he communicated with Caballero-Melgar (DN 686 PageID # 4276-77, 4200-01, 4205, 4206-07, Evid. Hr'g Tr.). Mr. Caldwell acknowledged having a great deal of difficulty helping Caballero-Melgar understand that under the doctrine of accomplice liability he could be convicted of the murder despite his not being present in the store when a co-defendant shot and killed the victim (DN 686 PageID # 4210). Mr. Caldwell indicated although he provided examples, it did not seem to assist Caballero-Melgar in understanding that if he went to trial, he

could be convicted of murder even though he did not have the gun, he did not fire the gun, and he did not shoot anybody (*Id.* at PageID # 4210-12). Caballero-Melgar agreed that despite Mr. Caldwell's numerous efforts he struggled to understand how he could be charged with murder when he was not inside the store (*Id.* at PageID # 4277-78).

On the issue of understanding the doctrine of accomplice liability, there is additional evidence in the record that warrants mention. During the evidentiary hearing Mr. Caldwell testified as they got closer to trial, he began to question whether Caballero-Melgar really had difficulty understanding his accomplice liability exposure (DN 686 PageID # 4213). Relatedly, on Friday, April 23, 2021, just four days before the trial started, the District Judge conducted an *ex parte* hearing on Caballero-Melgar's motion to appoint new counsel (**SEALED** DN 587, *Ex Parte* Hr'g Tr.). Caballero-Melgar's motion was in part based on counsels' refusal to file a *pro se* motion that argued Counts Two and Four should be dismissed because Caballero-Melgar cannot be convicted of murder as he was not present when the robbery took place (**SEALED** *Id.* at PageID # 2797-2799). The District Judge unequivocally informed Caballero-Melgar that his attorneys are not required to file all motions that he requests in his criminal case, especially when a motion is frivolous (**SEALED** DN 587 PageID # 2799). The District Judge explained to Caballero-Melgar that the *pro se* motion is meritless because under the applicable law a jury could convict him of murder despite his not being present in the store when a co-defendant shot and killed the victim (**SEALED** DN 587 PageID # 2799-2801, *Ex Parte* Hr'g Tr.).[4] Notably, during the evidentiary

---

4 Specifically, the District Judge said:
> So with respect to the – to the murder charge, you can be found guilty of murder under 924(c) if the jury believes, beyond a reasonable doubt, that you were involved in the planning of the robbery, and

13

hearing, Caballero-Melgar confirmed that ultimately it was his decision to go to trial because he did not want to plead guilty to the murder charge (DN 686 PageID # 4278, 4285).

The undersigned finds that Mr. Caldwell provided compelling evidentiary hearing testimony that indicates he provided Cabellero-Melgar with sound, accurate, and understandable advice which included examples of accomplice liability. Thus, Mr. Caldwell has complied with the state bar professional standard by explaining the doctrine of accomplice liability "to the extent reasonably necessary to permit" Cabellero-Melgar "to make an informed decision regarding" whether to accept the plea offer or go to trial. Ky. Sup. Ct. Rule 3.130, Rule Prof. Conduct 1.4(b). Further, four days prior to trial, the District Judge reinforced that which Mr. Caldwell had already explained to Cabellero-Melgar regarding the issue. Equally important, Cabellero-Melgar's motivation for seeking appointment of new counsel and his evidentiary hearing admission suggest he had a disagreement with the law, as opposed to a lack of understanding. For these reasons, Cabellero-Melgar has not satisfied his burden of demonstrating that Mr. Caldwell's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

### b. Prejudice Prong

The focus now shifts to the question of whether Caballero-Melgar has shown there is a reasonable probability that he would have accepted the prosecution's plea offer had he been afforded effective assistance of counsel. *See Frye*, 566 U.S. at 147. Mr. Caldwell's evidentiary

---

that you knew that your accomplices were armed with guns during that robbery, and that the use of the gun was reasonable fore -- reasonably foreseeable. That will be the issue that will – you know, that the case will turn on with respect to whether you're found responsible for the murder of the victim in this case.
(**SEALED** DN 587 PageID # 2800, *Ex Parte* Hr'g Tr.).

hearing testimony indicates Caballero-Melgar was unwilling to accept the prosecution's plea offers because they all involved his entering a guilty plea to murder; and he was reluctant to sign a statement authorizing Mr. Caldwell to make a counteroffer for 20 years (DN 686 PageID # 4211-12, 4260-62). Additionally, Mr. Caldwell testified that on the morning of the first day of trial, the District Judge engaged in a colloquy with counsel and Caballero-Melgar about the prosecution's 336-month binding plea offer (*Id.* at PageID # 4214-17). During this colloquy, Mr. Caldwell recalled informing the District Judge that Caballero-Melgar emphatically rejected the offer despite being advised of the pitfalls of going to trial and his recommendation to accept the offer (*Id.* at PageID # 4216-17, 4247-49).

Caballero-Melgar testified that Mr. Caldwell came to see him at the jail about a month prior to trial and conveyed the prosecution's first plea offer, which included a sentence of 28 years (*Id.* at PageID # 4267). He believes that Mr. Caldwell came "four times that same day to get me to sign" (*Id.*). Caballero-Melgar recalled asking Mr. Caldwell "to try to get me just something – 20 years or less, that I would be willing to sign" (*Id.* at PageID # 4267, 4269). He also remembered asking Mr. Caldwell for "an appointment with the prosecutor, leave my wife out of it, and I would sign agreeing to 20 years" (*Id.* at PageID # 4269). Caballero-Melgar recalled being told by Mr. Caldwell "the only way that would happen is if I cooperated" and what cooperation would mean (*Id.*). Caballero-Melgar testified that just a few days after the first offer, Mr. Caldwell returned and "said there was an offer of 26 -- about 26 and a half years" (*Id.* at PageID # 4268). Caballero-Melgar recalled that on the first day of trial the judge inquired as to whether "I had received the offer for the 26 years" (*Id.*). On cross-examination, Cabellero-Melgar agreed that Mr. Caldwell

could not make the prosecutor extend a certain offer (*Id.* at PageID # 4279). Additionally, Caballero-Melgar confirmed that it was his decision to go to trial because he was unwilling to sign a plea offer with a sentence of more than 20 years and he did not want to plead guilty to the murder charge (*Id.* at PageID # 4278, 4285). Despite his admissions, Cabellero-Melgar claimed he was unaware of the consequences of going forward at trial (*Id.* at PageID # 4285-86).

There is additional evidence in the record that warrants mention. During a pretrial hearing on Friday, April 23, 2021, just four days prior to trial, the District Judge made a concerted effort to ensure that Caballero-Melgar had received the plea offer, understood he could receive a sentence of 315 months (26.25 years) if he accepted the plea offer, and understood if he went to trial he could be convicted of murder and receive a life sentence (**SEALED** DN 587 PageID # 2800, 2811-14, *Ex Parte* Hr'g Tr.). Caballero-Melgar confirmed he received the offer, understood his options, understood the consequences of those options, and he had rejected the offer (**SEALED** *Id.*).

Additionally, before the trial began on the morning of Tuesday, April 27, 2021, the District Judge enquired about any further plea offer discussions (DN 589 PageID # 2881-83). Following an update by counsel regarding the status of plea negotiations, Caballero-Melgar affirmatively indicated he still wished to go to trial (*Id.* at PageID # 2883). The District Judge then commented:

> Very well. Based on the statements that Mr. Caballero-Melgar has made[,] and his counsel have made, the defendant has been apprised of the potential penalties associated with a guilty verdict, and he's been apprised of the plea offer made by the United States and his counsel and is choosing to proceed to trial.

(*Id.*).

The weight of the evidence discussed above indicates that due to the efforts of both Mr. Caldwell and the District Judge, in the days leading up to and on the morning of the trial, Caballero-

Melgar was more than adequately advised concerning the doctrine of accomplice liability and the consequences he faced if he went to trial versus accepting the prosecution's 315-month plea offer. Moreover, during the evidentiary hearing, Caballero-Melgar confirmed that it was his decision to go to trial because he was unwilling to sign a plea offer with a sentence of more than 20 years and he did not want to plead guilty to the murder charge (DN 686 PageID # 4278, 4285). For these reasons, Caballero-Melgar cannot show there is an reasonable probability that he would have accepted the prosecution's plea offer had he been afforded effective assistance of counsel. *See Frye*, 566 U.S. at 147.

Consequently, Caballero-Melgar is not entitled to relief on this claim of ineffective assistance of counsel because he has not satisfied his burden as to the performance and prejudice prongs of the *Strickland* test.

### 4. *Certificate of Appealability*

When a claim is rejected on the merits, to be entitled to a Certificate of Appealability, the movant must demonstrate that reasonable jurists would find the Court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons set forth above, reasonable jurists would not find the above assessment of Caballero-Melgar's ineffective assistance of counsel claim debatable or wrong. Therefore, the undersigned does not recommend issuance of a Certificate of Appealability for the ineffective assistance of counsel claim set forth in the revised version of Ground One of Caballero-Melgar's motion to vacate (DN 688 PageID # 4477-78).

### C. <u>Ground Two</u>

### *1. Arguments of the Parties*

Caballero-Melgar contends that at trial counsel provided ineffective assistance by failing to cross-examine six of the twelve government witnesses at trial (DN 688 PageID # 4478-81). Caballero-Melgar alleges that trial counsels' omission deprived him of the "opportunity to expose weaknesses, inconsistencies, or bias" in their testimony (*Id.* at PageID # 4479). Caballero-Melgar states that failure to cross-examine half of the government witnesses cannot be reasonable trial strategy, evidenced by trial counsel's lack of preparation and admission that the decision was "made in the moment" (*Id.* at PageID # 4479-80). Caballero-Melgar further points to trial counsel's "perfunctory and superficial" cross-examination of three co-defendants as prejudicial error (*Id.* at PageID # 4480). Finally, Caballero-Melgar avers that trial counsel did not discuss this decision with him and that he had no chance to confer with trial counsel during breaks (*Id.*). Caballero-Melgar asserts that there is a reasonable probability that absent trial counsel's deficient performance the outcome at trial would have been different (*Id.* at PageID # 4481).

The United States contends Mr. Caldwell's testimony indicates that trial counsel made calculated decisions concerning which prosecution witnesses to cross examine as part of their trial strategy (DN 689 PageID # 4486-88). Although Mr. Caldwell and his co-counsel Mr. Darling had prepared for potential cross examination of each prosecution witness, after hearing the direct testimony of each witness they assessed whether it was better not to ask any questions to avoid doing damage to Caballero-Melgar's case (*Id.* at PageID # 4487-88). The United States claims that the evidence shows trial counsel made strategic decisions and Caballero-Melgar has failed to demonstrate how he was prejudiced (*Id.* at PageID # 4488).

## 2.    *Applicable Law*

The Supreme Court explained "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Further, the Supreme Court instructed as follows:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf. Engle v. Isaac*, 456 U.S. 107, 133-134, 102 S.Ct. 1558, 1574-1575, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *See Michel v. Louisiana*, supra, 350 U.S., at 101, 76 S.Ct., at 164. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. *See Goodpaster, The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases*, 58 N.Y.U.L.Rev. 299, 343 (1983).

*Id.* at 689-690. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. Further, a court must determine:

> [W]hether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

19

*Id.* Courts recognize the "wide latitude" given to trial counsel "in making tactical decisions" when considering the reasonableness of counsel's conduct. *Id.* at 689.

Cross-examination of a witness is one such tactical decision. "The cross-examination of a witness is a delicate task; what works for one lawyer may not be successful for another. Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Guysinger v. Warden, Noble Corr. Inst.*, No. 2:19-CV-774, 2019 U.S. Dist. LEXIS 203816, at *28 (S.D. Ohio Nov. 25, 2019) (quoting *Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997)).

The Supreme Court's discussion about resulting prejudice begins with the observation "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Thus, under the prejudice inquiry, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of a criminal trial, the prejudice inquiry requires the defendant to show there is a reasonable probability that, absent trial counsel's errors, the jury would have had a reasonable doubt respecting guilt. *Id.* at 695.

### 3. *Discussion*

#### a. **Performance Prong**

Caballero-Melgar points out that Mr. Caldwell admitted that prior to trial he did not interview any co-defendants who were identified as prosecution witnesses (DN 688 PageID # 4479) (citing DN 686 PageID # 4263). But Mr. Caldwell explained that he made a strategic

decision not to make a request to interview the cooperating co-defendants because their attorneys would be unwilling to give their clients an opportunity to jeopardize whatever sentencing credit they were getting for cooperation with the prosecution (*Id.* at PageID # 4246-47, 4263-64).

Mr. Caldwell explained that he and his co-counsel, Mr. Darling, were prepared to cross-examine Detective Mike Nade with the Bowling Green Police Department, Special Agent Willian Kurtz with the FBI, Special Agen Donald Suchy with Homeland Security, and Special Agent Sean Laferte with the FBI (DN 686 PageID # 4224-31). But, after hearing the officers' testimony, Messrs. Caldwell and Darling conferred and as a matter of strategy decided not to cross-examine the witnesses because they would not gain anything, they could only harm Caballero-Melgar's case, and the witnesses provided enough testimony to provide the defense with beneficial closing arguments (*Id.* at PageID # 4224-31, 4251-52). Mr. Caldwell explained he did not cross-examine Rosio Lucero, the store clerk, because they planned as a matter of trial strategy to argue in closing that she did not testify Caballero-Melgar was in the store at the time of the robbery (*Id.* at PageID # 4225-26, 4251-52). As a matter of trial strategy, Mr. Caldwell attacked the motives of the testifying co-defendants by asking about their plea agreements with the United States and the potential sentences they expected to receive (*Id.* at PageID # 4228-29). Additionally, their trial strategy was try to mitigate Caballero-Melgar's punishment because there was not a realistic expectation of an acquittal (*Id.*). Additionally, Mr. Caldwell testified that there were three interpreters in the courtroom throughout the trial and one was always available to facilitate counsel's conversations with Caballero-Melgar (*Id.* at PageID # 4231-33). Mr. Caldwell did not recall Caballero-Melgar asking any questions about their cross-examination of witnesses (*Id.*).

Mr. Caldwell's testimony about counsels' cross-examination strategy at trial is compelling. By contrast, Plaintiff's general assertions—counsel should have conducted cross-examination of six prosecution witnesses and better impeachment cross-examination of three co-defendants—fall woefully short of demonstrating objectively unreasonable representation. *See Strickland*, 466 U.S. at 689-90. Consequently, Caballero-Melgar has not satisfied his burden under the performance prong of the *Strickland* test. Nevertheless, the undersigned will address the second prong of the *Strickland* test.

### b.     Prejudice Prong

Considering the overwhelming evidence of guilt and Mr. Caldwell's compelling testimony about counsels' trial strategy, Caballero-Melgar cannot show there is a reasonable probability that, absent trial counsels' purported omissions, the jury would have had a reasonable doubt respecting guilt. *Id.* at 695. In reaching this conclusion, the undersigned notes that Caballero-Melgar has not identified specific cross-examination questions that should have been directed to each identified witness and what he believes the responses would have revealed. Therefore, Caballero-Melgar has not satisfied his burden under the prejudice prong of the *Strickland* test.

### 4.     *Certificate of Appealability*

When a claim is rejected on the merits, to be entitled to a Certificate of Appealability, the movant must demonstrate that reasonable jurists would find the Court's assessment of the constitutional claim debatable or wrong. *Slack*, 529 U.S. at 484. For the reasons set forth above, reasonable jurists would not find the above assessment of Caballero-Melgar's ineffective assistance of counsel claim debatable or wrong. Therefore, the undersigned does not recommend

issuance of a Certificate of Appealability for the ineffective assistance of counsel claim set forth in the revised version of Ground Two of Caballero-Melgar's motion to vacate (DN 688 PageID # 4478-81).

D.     **Ground Three**

1.     **Arguments of the Parties**

Caballero-Melgar contends that the cumulative effect of numerous failures by trial counsel constitute ineffective assistance of counsel (DN 688 PageID # 4481-82). Caballero-Melgar lists several alleged errors not mentioned elsewhere, but which he believes show "a pervasive lack of preparation, advocacy, and diligence that deprived [him] of a fair trial and sentencing proceeding." (*Id.*).

The United States acknowledges that Caballero-Melgar lists several issues, including counsels' failure to make an opening statement and subpoena or call witnesses, that he believes creates the cumulative effect of ineffective assistance of counsel (DN 689 PageID # 4488-90). It argues the record indicates that trial counsel provided effective assistance and Caballero-Melgar has not demonstrated any prejudice.

2.     *Discussion*

The Sixth Circuit has "acknowledge[d] that trial-level errors that would be considered harmless when viewed in isolation of each other might, when considered cumulatively, require reversal of a conviction." *Campbell v. United States*, 364 F.3d 727, 736 (6th Cir. 2004). "To warrant a new trial, however, the cumulative effect of the errors must have 'deprived [the defendant] of a trial consistent with constitutional guarantees of due process.'" *United States v. Sypher*, 684 F.3d 622, 628 (6th Cir. 2012) (quoting *United States v. Hernandez*, 227 F.3d 6886, 697 (6th Cir. 2000)). But when no single error by counsel has been identified, the cumulative effect of non-errors by counsel cannot collectively amount to a violation of due process that

warrants a new trial. *See Campbell*, 364 F.3d at 736 (collecting cases). Thus, the undersigned must assess whether Caballero-Melgar has identified at least a single error by counsel.

First, Caballero-Melgar complains that trial counsel failed to file any substantive pretrial motions. Mr. Caldwell's unrebutted testimony indicates he did not have a good faith basis for filing a motion to suppress but did have a sound basis for filing a motion in limine concerning the store video depicting the fight and shooting of the victim (DN 686 PageID # 4217-19). Mr. Caldwell explained that he did not have to file a motion in limine because he was able to enter into an agreement with the prosecutor concerning certain parts of the video that were too prejudicial (*Id.*). Thus, Caballero-Melgar fails to demonstrate what specific motions should have been filed and how they would have changed the outcome of his case.

Next, Caballero-Melgar asserts that counsel failed to subpoena or call defense witnesses despite being provided with their names and contact information. Caballero-Melgar testified that his sister-in-law and a childhood friend could have been witnesses concerning his good character from his childhood to becoming a father (DN 686 PageID # 4283). He acknowledged these witnesses had no first-hand knowledge about the underlying facts and evidence in the case (*Id.*). Moreover, Caballero-Melgar fails to demonstrate there is a reasonable probability that the proposed witness testimony would have changed the outcome of his case.

Additionally, Caballero-Melgar contends that counsel failed to retain a cell phone expert to rebut the prosecution's technical evidence. But he has made no effort to demonstrate how this would have changed the outcome of his case considering the overwhelming prosecution evidence which included damaging testimony from Caballero-Melgar's own co-defendants and harmful

surveillance video showing him in certain store locations before the robberies took place. Caballero-Melgar also alleges that counsel failed to make an opening statement. But he has made no effort to overcome the presumption that, under the circumstances, Mr. Caldwell's failure to do so might be considered sound trial strategy. *See Strickland*, 466 U.S. at 689-90.

Further, Caballero-Melgar points out that trial counsel, by agreeing to the modified *Pinkerton* jury instruction, waived his ability to challenge on appeal that the instruction did not incorporate every element of the Sixth Circuit pattern instruction regarding *Pinkerton* liability. Caballero-Melgar has not, however, explained how trial counsels' strategic decision fell below an objective standard of reasonableness and there is a reasonable probability that the outcome at trial or on appeal would have been different. *See Strickland*, 466 U.S. at 688, 694.

To the extent Caballero-Melgar claims that counsel failed to file any post-trial motions or move for judgment notwithstanding the verdict, he has not explained on what basis he believes such motions could and should have been filed. As for his claim that counsel failed to file a sentencing memorandum, he has not explained how this prejudiced him. Moreover, his claim is not supported by case law. *See United States v. Jennings*, No. 2:06-79-DCR, 2:11-7157-DCR, 2011 WL 3046319, at *3 (E.D. Ky. July 25, 2011) (recognizing cases within and outside the Sixth Circuit holding that counsel's performance in not inadequate when a sentencing memorandum was not filed).

Finally, Caballero-Melgar asserts that counsel should have filed an objection to the leadership enhancement but fails to identify a basis for doing so. Mr. Caldwell testified that they did not have any rebuttal because of the proof that came out at trial regarding applicability of the

leadership enhancement (DN 686 PageID # 4239). Notably, Caballero-Melgar has not rebutted Mr. Caldwell's testimony or provided a developed argument in support of an objection to the leadership enhancement.

For the reasons set forth above, Caballero-Melgar has not identified a single error by counsel. Therefore, the cumulative effect of the nine non-errors by counsel cannot collectively amount to a violation of due process that warrants a new trial. *See Campbell*, 364 F.3d at 736.

### 3. *Certificate of Appealability*

When a claim is rejected on the merits, to be entitled to a Certificate of Appealability, the movant must demonstrate that reasonable jurists would find the Court's assessment of the constitutional claim debatable or wrong. *Slack*, 529 U.S. at 484. For the reasons set forth above, reasonable jurists would not find the above assessment of Caballero-Melgar's ineffective assistance of counsel claim debatable or wrong. Therefore, the undersigned does not recommend issuance of a Certificate of Appealability for the ineffective assistance of counsel claim set forth in the revised version of Ground Three of Caballero-Melgar's motion to vacate (DN 688 PageID # 4481-82).

### E. <u>Ground Four</u>

Caballero-Melgar's post-hearing brief (DN 688) is silent as to Ground Four in the 2255 motion (DN 647 PageID # 3998). For this reason, the Court should construe the claim of ineffective assistance of appellate counsel as abandoned. Notwithstanding, the testimony of Kevin Schad (DN 686 PageID # 4181-94) soundly rebutted Ground Four's assertions that he failed to: communicate and keep Caballero-Melgar informed on issues being raised on appeal; allow

Caballero-Melgar to participate in his appeal and include issues; and raise stronger issues on appeal (DN 647 PageID # 3998). This may explain why Caballero-Melgar's post-hearing brief (DN 688) is silent concerning Ground Four.

When a claim is rejected on the merits, to be entitled to a Certificate of Appealability, the movant must demonstrate that reasonable jurists would find the Court's assessment of the constitutional claim debatable or wrong. *Slack*, 529 U.S. at 484. For the reasons set forth above, reasonable jurists would not find the above assessment of Caballero-Melgar's ineffective assistance of counsel claim debatable or wrong. Therefore, the undersigned does not recommend issuance of a Certificate of Appealability for the ineffective assistance of counsel claim set forth in the revised version of Ground Four of Caballero-Melgar's motion to vacate (DN 647 PageID # 3998).

## VI.     RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Caballero-Melgar's motion to vacate filed under 28 U.S.C. § 2255 (DN 647) be **DENIED and DISMISSED with prejudice**. Further, the undersigned does not recommend issuance of a Certificate of Appealability as to the claims raised in Caballero-Melgar's motion to vacate (DN 647).

December 30, 2025

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

## IV.   **NOTICE**

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.  Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.  If a party objects, such objections must be timely filed, or further appeal is waived.  *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985).

December 30, 2025

*H. Brent Brennenstuhl*
**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:  Jorge Santo Caballero-Melgar
              Counsel